Louisville and Frankfort Railroad Company *vs.*    ORD. PET.
Milton.

APPEAL FROM OLDHAM CIRCUIT.                          Case 16.

1. Though one who grants a right of way through his field for running a railroad, is not bound to inclose his field; it does not follow that the company are not responsible for injury done to stock on the road by the train, in no case; nor is the company under legal obligation to inclose the railroad.

2. If one who grants the right of way for a railroad through his field, permit his stock to run at large upon the road, it is at his own risk, and the company are not responsible for injuries done to stock straying upon the road, unless the injury could have been avoided by the agents of the company, with due regard to the safety of the train and its contents.

3. If stock permitted to run at large upon a rail track, are killed accidentally by the train when running at its customary railroad speed, no right of action accrues to the owner of such stock.

Chief Justice Hise delivered the opinion of the court.         June 28.

Robert Milton, plaintiff, sued the Louisville and     Case stated.
Frankfort Railroad Company, and presented in his petition, in separate paragraphs, as the grounds of his action, that the company, by their agents, had destroyed at different times, first, a brown mare, secondly, a sorrel horse, and thirdly, a cow and some hogs; all the property of the plaintiff, and in his possession. That they were destroyed whilst they were feeding within and upon the field or pasture of the plaintiff, in and through which the railroad of the company was situate and passed, and when they were upon or near the railroad; that the animals were destroyed by the locomotive and cars of the company having been run upon or over them, whilst they were near or upon that part of the road which passed through the plaintiff's field or pasture, through the negligence and carelessness of the company's engineers, agents and conductors, in not giving the animals time to get out of the way, in not driving them off from the road, and by reason of their negligent and improper manner of running the said locomotive and cars upon them.

The company answer, and rely for their defense, upon the ground, that the plaintiff had granted to the company the right of way through the said field and pasture, and the right to construct their railroad through and upon it, and exhibit the grant; that the railroad was the exclusive property of the company, and they had an exclusive and lawful right to use the same, by running upon it their locomotives and cars; and they deny that the destruction of the plaintiff's mare, horse and cow was caused by the negligence, unskillfulness, or improper conduct of their agents, in running their trains upon their railroad, but insist that the animals belonging to plaintiff, were destroyed if at all, by the fault and negligence of the plaintiff, by permitting them to run at large upon the field through which their railroad passed, with the consent of the plaintiff himself, when there was no intervening fence to prevent them from trespassing upon the defendants road, and hindering and obstructing defendants in the use of the road, and causing thereby great delays and dangers to the passengers and property conveyed upon it.

So it appears that the plaintiff bases his right to a recovery in the case, upon the charge of the carelessness and negligence of the company's agents. The defendants deny that the injuries complained of were caused by the negligence, carelessness, or want of skill of the agents employed to run and conduct the trains upon the road, but rather by the improper conduct and negligence of the plaintiff, in permitting his stock to roam at large and to stray upon the railroad.

The jury, after having heard the evidence, and after having been instructed upon the law applicable to the case, by the court, returned their verdict in favor of the plaintiff, for twelve dollars, in damages; whereupon, the court gave judgment for the damages and costs of suit.

The defendants demanded that the verdict and judgment should be set aside, and new trial awarded, because—

1st. The verdict of the jury was not supported by the proof, and unauthorized by law.

2d. Because the court misdirected the jury in respect to the law of the case.

From the amount of the damages found by the verdict, and from the proof in the cause, it is inferred that the jury regarded the company as only responsible for the value of the cow, and that with respect to the other animals, to-wit: the mare, the horse, and the hogs, that the proof did not justify a verdict for their value against the company.

John W. Byers was the only witness who proved that the cow was destroyed by the locomotive and train of the company. He proves, in substance, that the locomotive and train ran upon and destroyed the plaintiffs cow on that part of the track where it passes through the plaintiff's pasture. That when he first saw the cow, she was trotting along on the track about one hundred yards in advance of the train, which was running at its usual speed. That when the train first came in view, he heard the sound of the whistle, and continued to hear it sounding until the train struck and killed the cow. The witness did not perceive that any effort was made to stop the train.

Upon this state of pleadings and proof, the circuit judge overruled the motion of defendants' attorney to instruct the jury as follows:

"The plaintiff, in permitting his stock to go at large in his field, through which the road of defendants passed, and said stock to go upon defendants road, in the way of the passage of defendants cars, was guilty of such a want of care on his part, as to prevent him from maintaining this action, and they must find for defendants."

It is assigned for error, that the circuit judge refused to give this instruction. But no error in this was

committed, and the instruction was properly refused, as the court was asked thereby, to tell the jury in substance, that in no state of case could a railroad company be made lawfully responsible for the destruction of property on their road, by running their trains upon it or over it, although done intentionally, or in a wanton manner, when it could be conveniently avoided without incurring any great risk or danger to the persons or property in the cars. Or in other words, that inasmuch as the road belongs to the company exclusively, and that they alone have lawful right and authority to run their trains upon it, and that the lawful purpose, and the legitimate design of the creation of railroad companies, and the construction of their roads is, to have conveyed, with the greatest possible speed, property and persons along such roads, that therefore, they have a right, recklessly, and wantonly, to run their trains upon or over whoever or whatever comes upon or obstructs their track, although they might avoid it without being unreasonably delayed, and without danger or injury to the train and its contents—that is to say, "stand off the track, keep off your stock, and let nothing obstruct our trains, if you do, we may, and will, though it be not necessary, and can be easily avoided, with but inconsiderable loss of time, run over all such obstructions, and destroy all persons or property which may be in our way." Railroad companies have no such license as this, and the first instruction was therefore properly refused.

On motion of the plaintiff's attorney the court instructed the jury: "That although the plaintiff granted to defendants the right of way for their said road, through his, plaintiff's field or pasture, he, plaintiff, did not, by such grant, bind himself to make a fence on both sides of said road, through said field or pasture, or deprive himself of the use of said field or pasture, by suffering his horses, cattle, and other stock to be and remain on said field and pasture."

This instruction is conveyed in language unskillfully selected; but stripped of its verbiage it is understood to mean simply, that the plaintiff had not surrendered his right to pasture his stock upon his field, by granting to the railroad company the privilege of building their road upon it and through it, and that he was not bound to inclose his field so as to keep his stock from straying upon it. Considered apart from the purpose intended to be secured, and the conclusion of law designed argumentatively to be deduced from it, this instruction, taken literally, asserts what are manifestly mere truisms. For it will not be denied, that in the deed by which plaintiff granted the right of way over and through his pasture to the company, he did not bind himself to build fences on each side of the railroad, nor did there by reason thereof, exist a positive legal obligation to do so, nor could the right of the plaintiff be questioned, if he thought proper to exercise it, to allow his cattle, horses or hogs to feed upon this uninclosed pasture. But what was the purpose of this instruction, and how was it intended, and probably made to apply to the case under trial? It was doubtless procured in order to lay a foundation for the conclusion, that inasmuch as the plaintiff was not bound by law, to inclose the field, and had a lawful right to feed his stock upon it, that the railroad company would be responsible in all cases for running their trains over, and injuring or destroying such of his horses, cattle or hogs, as might intrude and be upon their railroad. In other words, that it was the legal duty of the railroad company to inclose their road, or otherwise to prevent the intrusion of stock upon it, if not, that they would be responsible for all loss, injury and destruction to stock occasioned by running their locomotives and cars upon their own road, in the manner, and for the purposes contemplated by the law of their creation.

If the plaintiff was not bound to inclose his pasture, because he had granted the right of way through it to the defendants, for their railroad, neither, as a

L. & F. RAILROAD COMPANY
vs.
MILTON.

1. Though one who grants a right of way through his field for running a railroad, is not bound to inclose his field, it does not fellow that the company are not responsible for injury done to stock on the road by the train in no case. Nor is the company under legal obligation to inclose the railroad.

2. If one who grants the right of way for a railroad thro'gh

his field, permit his stock to run at large upon the road, it is at his own risk, and the company are not responsible for injuries done to stock straying upon the road, unless the injury could have been avoided by the agents of the company, with due regard to the safety of the train and its contents.

consequence of the procurement and acceptance of the right of way, was the company bound to inclose their track. If the plaintiff had retained the lawful right to continue the use of his field to pasture his stock, though not separated from the railroad by any inclosure, he of course, must, in the exercise of that right, encounter all the risk voluntarily incurred by him of their loss and destruction.

The plaintiff acts with his eyes open. He knows his pasture is not inclosed, that his stock, unconscious of the danger, will, in feeding, probably intrude upon the railroad, which he has himself agreed may be run through his field. He knows the immense velocity and tremendous force with which the trains are driven upon these railroads, and the consequent imminent danger of destruction, if any obstruction should be encountered, which would thereby be incurred by the company's train, and by the persons and property thereby conveyed; and finally, he knows that the legal purpose and policy in the construction of railroads, and the incorporation of railroad companies is, to have conveyed, freight and passengers, property and persons, with the greatest possible speed through the country, and thus to save time, to cheapen travel and transportation, and promote the commercial prosperity of the country. And knowing all this, if the plaintiff chooses to permit his stock to have access to the defendants' railroad, and loss and destruction are the involuntary consequence, the railroad company ought not, and cannot be held responsible, unless it can be shown that such loss and destruction were caused by the wanton and reckless negligence of the company's agents, or in other words, the company cannot be held responsible, unless the injury could have been avoided by the company's agents, with due regard to the safety of the train and its contents; or if the destruction of the plaintiff's stock, in this particular case, was accidental, and not intentional, the loss should fall on the plaintiff, and properly, because he chose to encounter such risk by permitting his

stock to go at large in an open field, adjoining the road; and to subject the defendant to responsibility, it must be shown that the injury was not accidental, but the result of design, which design might be inferred from showing that the animal destroyed was observed in sufficient time to enable those governing the locomotive and cars, certainly, to avoid the injury without danger to the train itself, its contents, and without unreasonable delay, and by resorting to the usual expedients and precautions adopted under like circumstances.

The instruction marked A, quoted above, should therefore have been refused as misleading, or otherwise as containing mere abstract propositions, which if true, could not solve the legal question presented in the case. The instructions B and C, were properly overruled by the court, but the instructions given by the court as substitutes, or in lieu thereof, marked thus, X, XX, being inconsistent with the views of this court, of the principles of law, as applicable to the facts of this case, should have been withheld from the jury. They were misleading, and did not state with sufficient accuracy and precision the proposition of law applicable to the case.

The court, however, upon the defendants motion, gave the following instruction, which, as it is consistent with the views of this court as above expressed, and presents the proposition of law as applicable to this case correctly, is extracted from the record and adopted as a part of this opinion : "That if they believe from the proof, that the plaintiff suffered his stock to go at large, and that they strayed upon the track of the rail[road,] and were there killed *accidentally* by the train when it was running at customary railroad speed, they must find for the defendants, unless they should believe that they were intentionally injured and destroyed by the defendants or their agents, &c., in their employment."

3. If stock permitted to run at large upon a rail track, are killed accidentally by the train when running at its customary railroad speed, no right of action accrues to the owner of such stock.

Though proof of such fact would seem to be superfluous, yet the evidence was given to the jury, that it

is very hazardous for the trains in motion upon the track to encounter obstacles; and, of course, to escape the dangers and disasters incidental to such encounters of horses and cattle, or other obstructions upon the railroad, it is to be presumed that those in charge of the trains would in no case intentionally run over and destroy stock being upon the road, if seen in sufficient time, so as with safety to avoid it. It was therefore not necessary, in framing the above instruction, to have added the words, unless they should believe that the stock was intentionally injured and destroyed by the defendants or their agents. For if the injury or destruction occurred accidentally, it could not have happened by design. If by the proof, it appeared that the injury was intentionally committed, then the instruction, shorn of the needless addition above referred to, would not exonerate the defendants from responsibility.

The opinion of the supreme court of Pennsylvania, delivered in the case of the New York and Erie Railway Company vs. Skinner, reported in the December number, 1852, of the American Law Register, has been relied upon as authority in favor of the doctrines of law contended for by the defendants as applicable to this and all similar cases; but whilst it is admitted that that court, in the opinion cited, sustains to the utmost extent, the principle as embodied in the instruction last above copied from the record, yet this court is not disposed to sanction all the legal doctrines avowed in that opinion.

Wherefore, for the errors indicated, the judgment is reversed, and cause remanded for a new trial and further proceedings in conformity with this opinion.

MOREHEAD and BROWN for appellant; RODMAN for appellee.